IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MGM WELL SERVICES, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1634 |
| | § | |
| MEGA LIFT SYSTEMS, LLC, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This patent infringement case is before the Court on the Motion for Preliminary Injunction [Doc. # 5] filed by Plaintiff MGM Well Services, Inc. ("MGM"). Defendant Mega Lift Systems, LLC ("Mega Lift") filed its response [Doc. # 15] in opposition to MGM's motion, and MGM filed its reply [Doc. # 20]. The Court has carefully reviewed the full record in this case, as well as the governing legal authorities. Based on this review and the arguments and evidence presented by the parties at the hearing on July 14, 2005,[1] the Court concludes that MGM is entitled to a preliminary injunction in this case.

---

[1] The only witness presented at the hearing was Edward Wells, the inventor of the patent-in-suit. Wells testified about the prior art (including prior Wells inventions), the disadvantages of the prior art, the development of the device covered by the patent-in-suit, and the accused device. Defendant's principal was present at the hearing, but did not offer any testimony. Indeed, Defendant presented almost no evidence about its device/product or sales.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

MGM is the owner of United States Patent No. 6,719,060 ("the '060 Patent") which was issued on April 13, 2004. Generally, the '060 Patent relates to a two-piece plunger lift system[2] for use in gas wells to remove accumulated liquids and thereby increase the gas flow through the well to the surface. Early on, plunger lift systems involved a one-piece piston that was dropped into the gas well while the upward flow of the well was stopped. The piston fell through the accumulated liquid in the well and landed on a bumper spring located at the bottom of the well. When the gas flow was started again, the liquid in the well above the one-piece piston would be removed as the pressure from below pushed the piston toward the surface. The major disadvantage of the one-piece system was the need to stop the flow of gas from the well each time the piston was dropped.

MGM obtained a patent, United States Patent No. 6,209,637 ("the '637 Patent"), for a two-piece plunger lift system that includes a solid piece shaped like a dart and a separate hollow cylindrical piece. When dropped into the well, the two pieces fall independently through the well pipe. When the two pieces reach the bottom of the

---

[2]     The system is referred to as a "two-piece" system because the actual plunger has two pieces. The patented devices, however, consist of more than two pieces. The device described in the '060 Patent, for example, can be viewed as consisting of five main components: the sleeve, the ball, the separator rod, the housing, and the mechanism for interrupting the gas flow in order to release the sleeve.

well, they unite to operate much like the one-piece piston described above while moving upward from the force of the gas being produced. When the two united pieces reach the surface, a decoupler near or at the surface of the well separates them and the two pieces again fall independently into the well to repeat the process.

MGM later obtained a patent, United States Patent No. 6,467,541 ("the '541 Patent"), for a two-piece plunger lift system similar to the system described in the '637 Patent, except the solid piece is a ball and the hollow cylindrical piece is referred to as a sleeve. When the united two-part plunger reaches the surface, a separator rod dislodges the ball from the sleeve, and the ball falls into the well. The sleeve is held in place by a mechanical device until the liquid below accumulates to such an extent that it needs to be removed for optimum gas flow. The disadvantage of this two-piece system is that the mechanical device holding the sleeve at the surface requires the venting of a small amount of gas to release the sleeve to fall back into the well, and some oil and gas companies do not want to vent gas into the atmosphere.

The '060 Patent addresses this disadvantage by devising a "catcher assembly" located in a housing connected to the well at the surface that utilizes the unique shape of the separator rod and the flow of gas from the well to hold the plunger sleeve at the surface against gravity as desired. To release the plunger sleeve so it will fall back

down the well, a motor valve near the surface is closed for approximately seven seconds blocking the gas from the well from reaching the plunger.

MGM became aware that Mega Lift, one of its prior distributors, was selling an allegedly infringing two-piece plunger lift system called the "Chaser" system. MGM filed this lawsuit against Mega Lift for patent infringement. In defense and as its counterclaim, Mega Lift asserts that the '060 Patent is invalid as either anticipated by or made obvious by United States Patent No. 2,001,012 ("the '012 Patent"), issued May 14, 1935. Mega Lift also argues that it sells replacement parts, conduct that is not an infringing act.[3] Mega Lift also argued that MGM waited too long to seek injunctive relief and, as a result, Mega Lift has rebutted the presumption that MGM will suffer irreparable harm if the injunction is not issued.

MGM filed a Motion for Preliminary Injunction, which has been fully briefed. The Court held an evidentiary hearing on the motion, which is now ripe for decision.

---

[3] In its response to MGM's Motion for Preliminary Injunction, Mega Lift also asserts that the '060 Patent is invalid pursuant to 35 U.S.C. § 102(b), the "on sale bar." Mega Lift did not present evidence during the hearing to support its "on sale bar" argument, and the evidence included in its response to the motion does not establish that MGM offered for sale the two-piece plunger system described in the '060 Patent more than one year before filing its application for that patent. Consequently, Mega Lift's "on sale bar" argument does not provide a basis for denying injunctive relief in this case.

**II.      PRELIMINARY INJUNCTION ANALYSIS**

The decision whether to grant a preliminary injunction in a patent infringement case is within the Court's discretion. *Ranbaxy Pharmaceuticals Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1239 (Fed. Cir. 2003). MGM is entitled to a preliminary injunction if it shows: (1) a reasonable likelihood of success on the merits of its claims; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005).

**A.      Likelihood of Success on the Merits of Infringement and Validity**

In order to demonstrate a likelihood of success on the merits, MGM has to show, in light of the presumptions and burdens that will apply at a trial on the merits, that (1) at least one Mega Lift product likely infringes MGM's patent, and (2) the claims of MGM's patent will likely withstand Mega Lift's challenges to validity. Regarding infringement, Mega Lift first and foremost argues that it cannot infringe an invalid patent. Mega Lift also asserts that the sale of replacement parts is not infringement and that MGM has not presented evidence of a specific well in which the accused device has been installed and operates as described in the '060 Patent. Mega Lift's first argument, that Mega Lift cannot infringe an invalid patent, is more properly a challenge to the validity of the patent and will be discussed as such.

As to Mega Lift's second contention, it is true that selling replacement parts for an existing system may not constitute infringement. There is, however, evidence in the record that Mega Lift markets complete two-piece plunger lift systems, not merely individual replacement parts. *See* Mega Lift Webpage, Exh. C to Wells Declaration (depicting a complete system); Mega Lift Marketing Brochure, Exh. D to Wells Declaration (referring to savings "per system").

Third, MGM may not have evidence of an actual well in which the accused device is installed and properly functioning, but MGM presented credible unrebutted evidence that the accused device, under the laws of physics, would function the same way as the plunger system described in the '060 Patent. Indeed, there is no other reason for Mega Lift's copying of the uniquely shaped separator rod. This evidence is sufficient to establish a substantial likelihood that MGM can succeed on its claim that Mega Lift's "Chaser" system infringes the '060 Patent.

Mega Lift's principal challenge is to the validity of the '060 Patent based on the argument that the '060 Patent is either anticipated or made obvious by the '012 Patent. It is undisputed that the '012 Patent was not before the United States Patent Office ("USPO") during the inventor's prosecution of the '060 Patent.[4] It is also undisputed

---

[4] The uncontroverted evidence in the record is that MGM first became aware of the '012 Patent when Mega Lift's principal contacted MGM, informed MGM that he had found the
(continued...)

that the '637 Patent and the '541 Patent, as well as other prior art, were before the USPO.[5]

There is a statutory presumption that the '060 Patent is valid. 35 U.S.C. § 282. At the preliminary injunction stage, the patent's vulnerability is the issue, while validity is the issue at trial. *See Nat'l Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319, 1335 (Fed. Cir. 2004). To obtain injunctive relief, the patentee must show that the challenges to the validity of its patent lack substantial merit. *Id.* at 1334.

Mega Lift argues that the '060 Patent is invalid as anticipated by the '012 Patent. For a patent to be invalid for anticipation, a single prior art reference must contain all of the elements and limitations of the claim at issue. *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 545 (Fed. Cir. 1998). Claim 1 of the '060 Patent discloses:

> A plunger lift for a well producing through a production string communicating with a hydrocarbon formation, comprising a free piston having at least two sections, movable independently downwardly in the well, the sections comprising a lower component and a sleeve providing a seating surface for receiving the lower component so the lower component and sleeve join together in the well for pushing liquid, above the piston, upwardly and **a catcher assembly on the well at the surface** comprising a housing, a separator rod in the housing for receiving the sleeve thereon and dislodging the lower component, the housing, rod and

---

(...continued)
'012 Patent, and offered to "keep quiet" about the '012 Patent in exchange for a free license to distribute MGM's plunger lift system covered by the '060 Patent.

[5] The '637 Patent and the '541 Patent are much more relevant as prior art than the '012 Patent, and the USPO issued the '060 Patent over these disclosed prior art references.

>sleeve providing therebetween flow passes for formation contents, at least one of the flow passages being of variable cross-sectional size producing **a pressure drop sufficient to hold the sleeve in the housing against gravity**.

Claim 1 of the '060 Patent, Plaintiff's Hearing Exhibit 1 (emphasis added).

The "catcher assembly on the well at the surface" in Claim 1 of the '060 Patent is not disclosed in the '012 Patent. The claims in the '012 Patent also fail to include "a pressure drop sufficient to hold the sleeve in the housing against gravity." Indeed, the uncontroverted evidence in the record is that the device covered by the '012 Patent is intended to move quickly and frequently to the bottom of the well, not be caught and remain at the surface where it is held against gravity until the operator wants it to return to the bottom of the well. Because the '012 Patent does not contain all the elements and limitations of the '060 Patent, MGM has a substantial likelihood of success on the merits of Mega Lift's anticipation argument.

Mega Lift also argues that the '060 Patent is invalid for obviousness in light of the '012 Patent. Whether a patent is invalid as obvious is determined "on the basis of the following underlying findings of fact: '(1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness.'" *Id.* (quoting *Riverwood Int'l Corp. v. Mead Corp.*, 212 F.3d 1365, 1366 (Fed. Cir. 2000)). Secondary

considerations such as "commercial success, long felt but unsolved needs, failure of others, etc." are also relevant to the obviousness inquiry. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). "Commercial success is relevant because the law presumes an idea would successfully have been brought to market sooner, in response to market forces, had the idea been obvious to persons skilled in the art." *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1376, *reh'g denied*, 405 F.3d 1338 (Fed. Cir. 2005).

The evidence in this case is that the '012 Patent, issued in 1935, covered a device to be used in oil wells to maximize the amount of oil pushed out of the well while minimizing the flow of gas. *See* '012 Patent, p. 1, col. 2, lines 1-12 ("My invention relates to apparatus for pumping oil from wells [and] has as its main object that of facilitating the flow of oil in a well to the surface and conserving gas . . .."). The device covered by the '060 Patent is used in gas wells to maximize the flow of gas. The device covered by the '012 Patent was designed so that the plunger lift moved as rapidly and as frequently as possible up and down the well, which teaches *away from* a device that holds the plunger sleeve at the surface of the well against gravity for periods of time before allowing it to fall back to the bottom of the well. The '012 Patent as prior art is significantly different from the device disclosed in the '060 Patent, both in design and purpose. Mega Lift has failed to present any evidence regarding the

ordinary skill in the art at the time of the '012 Patent. MGM, on the other hand, has presented evidence that the plunger lift system covered by the '060 Patent has enjoyed great commercial success, indicating that if that plunger lift system had been made obvious by the '012 Patent, one of ordinary skill in the art would have developed it in something less than the almost seventy years between the issuance of the '012 Patent in 1935 and the development of the two-piece plunger lift system covered by the '060 Patent in 2002. MGM has established clearly a likelihood of success on the merits of Mega Lift's invalidity argument based on obviousness.

MGM has shown a substantial likelihood that it will succeed on the merits of its claim that Mega Lift is infringing the '060 Patent and that it will successfully defend against Mega Lift's invalidity arguments, both on anticipation and obviousness. As a result, MGM has satisfied the first element in the preliminary injunction analysis.

### B.     Irreparable Harm to Plaintiff if Injunction Denied

If the patent holder makes a clear showing of patent validity and infringement, it is entitled to a presumption of irreparable harm. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (quoting *Bell &*

*Howell Document Mgmt. Products Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997)). The presumption of irreparable harm is rebuttable. *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1363 (Fed. Cir. 2002).

MGM has established a likelihood of success on the merits of its claim and on Mega Lift's invalidity arguments. As a result, MGM is entitled to the presumption of irreparable harm.

Mega Lift argues that the presumption is rebutted because MGM knew in August 2004 that Mega Lift was marketing a two-piece plunger lift system, yet MGM did not file this lawsuit until May 6, 2005, and did not file its Motion for Preliminary Injunction until May 16, 2005. Mega Lift argues that MGM's delay in seeking injunctive relief rebuts the presumption of irreparable harm because it shows MGM did not consider the need for injunctive relief to be an urgent one. The Court finds that Mega Lift's evidence does not show that MGM knew Mega Lift was marketing a two-piece plunger lift system that allegedly infringed the '060 Patent before February 2005. Instead, the evidence indicates that MGM believed in August 2004 that the Mega Lift plunger system did not infringe the '060 Patent because it used a "caged ball" and "caged ball" plungers are considered one-piece plungers with an internal valve. *See* Wells Declaration, Exh. 2 to Motion for Preliminary Injunction, ¶ 21. As a result, Mega Lift

has not rebutted the presumption of irreparable harm to which MGM is entitled in this case.

### C. Balance of Hardships

The irreparable harm to MGM significantly outweighs the potential injury to Mega Lift if the preliminary injunction is granted. There is no evidence that Mega Lift has been selling the accused device more than a few months or that it has built up a sizeable customer base. There is no evidence that Mega Lift has made a substantial investment of time or money in developing or marketing its "Chaser" product, or that it has extensive inventory. MGM, on the other hand, has invested substantial financial and other resources over the past few years to develop its patented two-piece plunger lift system and to build a market for it. There is no evidence that MGM will not be able to provide an adequate number of systems to support the oil and gas industry while this lawsuit is pending. The Court can and will handle the case as expeditiously as possible, thereby minimizing the length of time the preliminary injunction is in place prior to final resolution of this case. Based on these considerations, as well as a

requirement for an adequate bond,[6] the Court concludes that the balance of hardships weighs in favor of the preliminary injunction.[7]

### D. Public Interest

Where no public health issue is at stake, there is a strong public interest in protecting patent rights. *See Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1364 (Fed. Cir. 2002), *aff'g* 132 F. Supp. 2d 365, 379 (D. Md. 2001). MGM has made a strong showing that its '060 Patent is valid and, therefore, the public interest favors the issuance of an injunction against infringement.

## III. CONCLUSION AND ORDER

MGM has demonstrated a substantial likelihood that it will succeed on the merits of its infringement claim against Mega Lift and will successfully defend against Mega Lift's challenges to the validity and enforceability of the '060 Patent. As a result, MGM is entitled to a presumption of irreparable harm that Mega Lift has failed to

---

[6] MGM requested that it not be required to post a bond, and Mega Lift requested that MGM be required to post a bond "in the millions of dollars." Neither party has presented evidence regarding the proper amount for a bond. The Court concludes from the evidence in the record that Mega Lift does not have a sizeable market for its "Chaser" system and a $30,000 bond will adequately protect Mega Lift if the injunction should not have been granted.

[7] Even were the Court to conclude that the balance of hardships did not weigh in favor of MGM, the other three factors weigh so heavily in favor of the requested injunction that MGM's motion would still be granted. *See, e.g., Hybritech Inc. v. Abbott Lab.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988) (affirming entry of preliminary injunction where "neither party has a clear advantage" on the balance of hardships factor).

rebut. The evidence of hardship to Mega Lift should the preliminary injunction issue is minimal and is substantially outweighed by the harm MGM will suffer if injunctive relief is denied. The public interest favors protecting MGM's patent rights. MGM has satisfied all four factors relevant to the issuance of a preliminary injunction and, therefore, it is hereby

**ORDERED** that MGM's Motion for a Preliminary Injunction [Doc. # 5] is **GRANTED**. It is further

**ORDERED** that Mega Lift Systems, LLC, its officers, employees, owners, agents, servants, successors and assigns, and all persons in active concert or participation with any of them, is **ENJOINED AND RESTRAINED** from:

(a) manufacturing, using, offering for sale, or selling within the United States any two-piece plunger lift system, in whole or in separate parts to a consumer, that infringes any claim of MGM's '060 Patent;

(b) importing into the United States any plunger lift system that infringes any claim of MGM's '060 Patent;

(c) inducing any third party to engage in any act that constitutes infringement of MGM's '060 Patent;

(d) contributing to the direct infringement of MGM's '060 Patent by any third-party by offering to sell or by selling in the United States, or

importing into the United States, any two-piece plunger lift system, in whole or in separate parts to a single consumer, that infringes any claim of MGM's '060 Patent; and

(e)  conspiring with, aiding, assisting or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a)-(d) above.  It is further

**ORDERED** that within three (3) business days following entry of this Memorandum and Order, MGM shall post bond in the amount of thirty thousand dollars ($30,000.00).  It is further

**ORDERED** that either party may request amendments to the language of this Preliminary Injunction by electronically filing any proposed revisions and delivering a courtesy copy to chambers by **11:00 a.m. on Friday, July 22, 2005**.

SIGNED at Houston, Texas, this **19th** day of **July, 2005, at 3:30 p.m.**

_____
Nancy F. Atlas
United States District Judge