IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MGM WELL SERVICES, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1634 |
| | § | |
| MEGA LIFT SYSTEMS, LLC, | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This patent case is before the Court on the Motion Seeking Exclusion of the
Expert Report and Testimony of Dr. Charles W. Alworth ("Motion") [Doc. # 104]
filed by Plaintiff MGM Well Services, Inc. ("MGM"), to which Defendant Mega Lift
Systems, LLC ("Mega Lift") filed a Response [Doc. # 131], and MGM filed a Reply
[Doc. # 144]. Having considered the parties' submissions, the evidence in the record,
and the applicable legal authorities, the Court concludes that Plaintiff's Motion
should be **granted**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this case has been set forth in prior opinions by the
Court in this case. Briefly, MGM is the owner of United States Patent No. 6,719,060
("the '060 Patent") which was issued on April 13, 2004. Generally, the '060 Patent
relates to what is referred to as a "two-piece plunger lift" system for use in gas wells

to remove accumulated liquids and thereby increase the gas flow through the well to the surface.  MGM alleges that Mega Lift is marketing an infringing product called the "Chaser" system.

Mega Lift designated Dr. Charles W. Alworth as an expert, both on the technology at issue in the case and on patent law issues.  MGM has moved to exclude Alworth's report and testimony on patent law because he lacks adequate education, training, or knowledge to qualify as a patent expert.  MGM also moved to exclude Alworth's report and testimony on the technology issues because he lacks the proper qualifications and because his methodology involved little more than adopting what he was told by Mega Lift's President, James Bartley.  The Motion has been fully briefed and is ripe for decision.

## II.   ANALYSIS

### A.   Standards for Expert Testimony

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  FED. R. EVID. 702.  The trial judge must determine as an initial matter whether the proffered witness is qualified to give the

expert opinion he seeks to express.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Under *Daubert*, the district court is to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [reliability] and of whether that reasoning or methodology can be applied to the facts at issue [relevance]." *Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93).  This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony.  *Id.* at 617-618 (citing *Kumho*, 526 U.S. at 147).  The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 151.  The Court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation.  *Daubert*, 509 U.S. at 590.  To demonstrate reliability, the proponent of the expert testimony must present "some

objective, independent validation of the expert's methodology.  The expert's assurances that he has utilized generally accepted scientific methodology is insufficient."  *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999).  The Court must consider (1) the validity of the scientific principles used; (2) the accuracy of the data relied upon by the expert; and (3) the correctness of the application of the scientific principles to the relevant data.  *See, e.g., Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 (5th Cir. 1994).  Four factors to consider in determining the reliability of proffered scientific evidence are (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance.  *Watkins*, 121 F.3d at 989 (citing *Daubert*, 509 U.S. at 593-94).  This analysis, however, is a flexible one.  "[N]ot every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."  *Guy*, 394 F.3d at 325.

Rule 704 of the Federal Rules of Evidence provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  FED. R. EVID. 704.  The

Fifth Circuit, however, "has repeatedly held that Rule 704 does not allow an expert to render conclusions of law." *United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998) (citing *Snap-Drape, Inc. v. Comm'r of Internal Revenue,* 98 F.3d 194 (5th Cir.1996)).

The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible. *Moore*, 151 F.3d at 276. The party offering the challenged expert opinions need not, however, prove "that the expert's testimony is correct." *Id.*

### B.   <u>Patent Law Expert</u>

Mega Lift has designated Alworth as an expert on patent law. Initially, the Court questions whether expert testimony on patent law would assist the trier of fact in this case. The Court will instruct the jury on the law they are to apply, and an expert is not permitted to give legal conclusions. *See United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998).

Additionally, the Court finds that Alworth does not have the education, training or experience to offer expert opinions on patent law. Alworth received his law degree from the University of Tulsa in December 1992, but he did not study any intellectual property law courses while in law school. Beginning in June 1995, he has been the principal of his own firm, Alworth Law and Engineering. He has not worked as a

patent examiner or in any other position with the United States Patent and Trademark Office, and he has represented clients in only two patent litigation matters.  He has written two papers on the general topic of intellectual property, but each paper was simply a "general overview" of patent, trademark, and copyright law.  He has drafted and filed patent applications, and is the named inventor on several patents.  He has never been qualified to testify as an expert on patent law.

Alworth's lack of expertise in the area of patent law is demonstrated many times in his report.  For example, Alworth opines that MGM's '060 Patent is unenforceable because the named inventor and his attorney failed to perform a "hand search of the prior art" before filing the patent application.  The Manual of Patent Examining Procedures, however, notes specifically that the "filing of an information disclosure statement shall not be construed as a representation that a search has been made" and that there is "no requirement that an applicant for a patent make a patentability search." *See* Manual of Patent Examining Procedure, Exh. F to Motion, § 609 (citing 37 C.F.R. § 1.97).

Although it is clear that Alworth has some very limited experience in patent matters, Mega Lift has failed to establish that Alworth has the education, training or experience to serve as an expert on patent law.  MGM's Motion to exclude Alworth's expert report and testimony on patent law is granted.

C.     **Technical Expert - Qualifications**

Alworth received a Bachelor of Science in electrical engineering from the University of Oklahoma in 1965.  He received a Master of Science in electrical engineering in 1967, and a Ph.D. in electrical engineering in 1969.  He has taught electrical engineering at the University of Oklahoma and at Texas A&M University. He served as Chairman of the Department of Electrical Engineering at the University of Texas at Tyler.  He worked for Conoco for over fifteen years.

Alworth clearly has extensive education, training, and experience in the field of electrical engineering.  He does not, however, have expertise in the area of plunger lift systems.  Indeed, he has little education, training or experience, if any, in the field of plunger lift systems used in the deliquification of oil and gas wells.  During his electrical engineering education, he did not study any courses in petroleum engineering, any courses relating to the deliquification of oil and gas wells, or any courses relating to plunger lift technology.  Similarly, none of Alworth's teaching involved oilfield technology.

Alworth worked as an oilfield engineer for Conoco, but he describes his work and "electrical and instrumentation design."  *See* Alworth Report, Exh. B to Motion,

p. 66.  His work involved control and safety shut down systems, facility construction, and accident investigation, and it required electrical and chemical engineering.  *Id.*

Alworth drafted patents relating to the electronic controls used in plunger lift systems, but his work did not involve these systems in any meaningful way, and any familiarity with the relevant technology he may have obtained while working on the patents for electronic controls does not rise to the level of expertise in the actual plunger lift systems.

Mega Lift argues that Alworth has the necessary qualifications because he "has more than six years experience in working with plunger lift systems."  *See* Response, p. 2.  It is clear, however, that this experience was in his capacity as an attorney for Bartley and Mega Lift, and his work relating to plunger lift systems was sporadic at best.  Indeed, he admitted in his deposition that over the past three years, he has spent less than one percent of his time on work relating to plunger lift technology.

Alworth has not engaged in engineering services of any kind or practiced as an engineer in any capacity since June 1995 when he formed Alworth Law and Engineering.  The "Engineering" in "Alworth Law and Engineering" relates exclusively to work as an expert witness and only in the field of electrical engineering.  This is the first case in which he has been offered as an expert on the

topic of plunger lift systems.  There is no indication that Alworth has been accepted by any court as an expert on any subject.

Although Alworth would perhaps be qualified to express an opinion in the field of electrical engineering, he lacks the necessary qualifications to offer expert opinions on the technology at issue in this case.  *See, e.g., Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997) (affirming exclusion of civil engineer proffered as mechanical engineering expert).

## D.    Technical Expert - Reliability and Relevance

Perhaps because he lacks the necessary qualifications in the area of plunger lift systems, Alworth's opinions are based almost entirely on information from Bartley, an interested party, rather than on Alworth's independent evaluation of the information in the record.   For example, Alworth did not perform his own calculations, but opined that MGM's calculations were incorrect because Bartley told him so.   Similarly, he did not review data from testing that Bartley allegedly performed on Mega Lift's plunger system, testifying in his deposition that he was not aware of the test and had not seen any of the results.

Opinions are excludable if they are supported only by the *ipse dixit* of the expert.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).  A court should "exclude expert testimony

where . . . there is 'too great an analytical gap between the data and the opinion proffered.'" *Burleson v. Texas Dept. of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Joiner*, 522 U.S. at 146).    "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (quoted in *Guile*, 422 F.3d at 227).

Alworth's opinions appear to be mere *ipse dixit*, presenting little more than a parroting of Bartley's personal views.  Rather than conduct and report the results of critical, independent analysis, it appears that Alworth relied heavily, if not exclusively, on what Bartley told him.  His expert report is at best an effort to synthesize Defendant's positions and present them summarily as an expert opinion. Mega Lift has not shown, and the Court is unpersuaded, that Alworth applied in his work for Mega Lift in this case the same rigor an expert would apply or that Alworth would have applied to his work in the field of electrical engineering.  Consequently, Alworth's opinions are not adequately reliable to be admissible.

## IV.  <u>CONCLUSION AND ORDER</u>

Alworth lacks adequate knowledge, skill, experience, education or training to qualify as an expert on patent law.  Although Alworth has significant and impressive education, training, and experience in electrical engineering, he lacks relevant knowledge necessary to qualify as an expert in this patent case involving a two-piece

plunger lift system.  Additionally, his opinions on technical issues are unreliable, in part because he lacks the proper qualifications and in part because he failed to use an acceptable methodology.

As a result, it is hereby

**ORDERED** that Plaintiff's Motion Seeking Exclusion of the Expert Report and Testimony of Dr. Charles W. Alworth [Doc. # 104] is **GRANTED**.

SIGNED at Houston, Texas, this 16th of **January, 2007**.

Nancy F. Atlas
United States District Judge