# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MGM WELL SERVICES, INC., | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1634 |
| | § | |
| MEGA LIFT SYSTEMS, LLC, | § | |
|    Defendant. | § | |

## MEMORANDUM AND ORDER

This patent case is before the Court on the Motion to Exclude Evidence and Argument Regarding Defenses and Evidence That Defendant Failed to Timely Disclose ("Motion") [Doc. # 107] filed by Plaintiff MGM Well Services, Inc. ("MGM"), to which Defendant Mega Lift Systems, LLC ("Mega Lift") filed a Response [Doc. # 129], and MGM filed a Reply [Doc. # 149].[1] The Court has carefully reviewed the full record in this case. Based on its review and the application of governing legal authorities, the Court **grants** Plaintiff's Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this case has been set forth in prior opinions by the Court in this case. Briefly, MGM is the owner of United States Patent No. 6,719,060

---

[1] MGM also filed a Supplemental Brief [Doc. # 160] advising the Court of a recent decision by the Federal Circuit, *O2 Micro, Inc. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355 (Fed. Cir. 2006).

("the '060 Patent") which relates to a "two-piece plunger lift" system for use in gas wells to remove accumulated liquids and thereby increase the gas flow through the well to the surface. MGM alleges that Mega Lift is marketing an infringing plunger lift system known as "Chaser".

MGM has moved to exclude argument and evidence regarding Dan Casey's purported prior art system because it was not properly disclosed in accordance with the Court's Amended Discovery Order [Doc. # 43], Docket Control Order [Doc. # 44], and Patent Rules. MGM also moves to exclude certain purported structural and dimensional features of components of Mega Lift's plunger lift system because Mega Lift produced only inaccurate information within the time requirements of the Docket Control Order.[2]

## II.   ANALYSIS

### A.   Applicable Deadlines and Patent Rules

On July 26, 2005, the Court issued its Amended Discovery Order requiring each party to disclose by August 10, 2005, "the legal theories and, in general, the factual

---

[2] Plaintiff moved also for exclusion of invalidity contentions and prior art patents disclosed only in the report of Mega Lift's designated expert, Dr. Charles Alworth, and for exclusion of a late opinion by Dr. Alworth. The Court previously granted MGM's broader motion to exclude *all* evidence and testimony by Dr. Alworth. *See* Memorandum and Order entered January 16, 2007 [Doc. # 171]. Because these matters have already been excluded, these aspects of the current motion are moot.

bases of the disclosing party's claims or defenses." *See* Amended Discovery Order, ¶ 1(c). Each party was also required to provide by August 10, 2005, the "name, address, and telephone number of persons having knowledge of relevant facts, a brief statement of each identified person's connection with the case, and a brief, fair summary of the substance of the information known by such person." *See id.*, ¶ 1(d). In the Amended Discovery Order, the Court also imposed on each party a "duty to supplement or correct its disclosures *immediately* if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true." *See id.*, ¶ 10 (emphasis added). The Amended Discovery Order provides specifically that a "party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures." *Id.*, ¶ 14.

On July 26, 2005, the Court also issued its Docket Control Order, including the Court's Patent Rules. The Docket Control Order required Mega Lift to file its Preliminary Invalidity Contentions, in compliance with Patent Rule 3-3, by September 30, 2005. *See* Docket Control Order, ¶ 2. The Court's Patent Rule 3-3 provides in

relevant part that the Preliminary Invalidity Contentions must contain the following information:

> (a) The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. . . . Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known. Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s);[3]
>
> (b) Whether each item of prior art anticipates each asserted claim or renders it obvious. If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified;
>
> (c) A chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found, . . . .

Court's Patent Rule 3-3. By the same deadline, Mega Lift was required to "produce or make available for inspection and copying: (a) Source code, specifications,

---

[3] Pursuant to 35 U.S.C. § 102(b), a person is not entitled to a patent if the invention was "in public use or on sale in [the United States] more than one year prior to the date of the application for the patent in the United States." Pursuant to 35 U.S.C. § 102(f), a person is not entitled to a patent if he did not invent the subject matter he seeks to patent. Pursuant to 35 U.S.C. § 102(g), a person is not entitled to a patent even if he is the inventor if another person conceived of and reduced the invention to practice before the applicant.

schematics, . . . or other documentation sufficient to show the operation of any aspects or elements" of the accused device.  *See* Court's Patent Rule 3-4.

The Amended Discovery Order and the requirement for the parties to file their preliminary contentions early in the case were designed to require litigants in patent cases such as this one to "put all their cards on the table up front."  *See Atmel Corp. v. Information Storage Dev., Inc.*, 1998 WL 775115 * 3 (N.D. Cal. Nov. 5, 1998). Under limited circumstances, a party may file "Final Invalidity Contentions."  *See* Court's Patent Rule 3-6.  Otherwise, amendment of or changes to the preliminary contentions are permitted only by Court order and "only upon a showing of good cause."  *See* Court's Patent Rule 3-7.  "The burden is on the [party seeking to amend its contentions] to establish diligence rather than on the opposing party to establish a lack of diligence."  *O2 Micro Int'l. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).  In this case, the deadline for Mega Lift to file its Final Invalidity Contentions was April 28, 2006.  *See* Docket Control Order, ¶ 15.3.  The discovery deadline was August 18, 2006.  *See id.*, ¶ 19.

Rules and deadlines that are "intimately involved in the substance of enforcement of the patent right," such as those relating to infringement and invalidity contentions, are governed by Federal Circuit authority.  *See O2 Micro*, 467 F.3d at 1364.  "[T]he exclusion of evidence is often an appropriate sanction for the failure to comply with

such deadlines." *Id.* at 1369. This is particularly true where the undisclosed information is significant and the party failing to make the timely disclosure lacked diligence. *See id.*

### B. Dan Casey System

Dan Casey is the holder of United States Patent 6,148,923 directed to a two-piece plunger system that does not use a separator rod. Mega Lift asserts that Casey also manufactured and sold a two-piece plunger system that uses a separator rod ("the Casey System"). MGM seeks to exclude evidence of the Casey System, not of Casey's patent.

In its Final Invalidity Contentions, Mega Lift stated that it anticipated that evidence still being collected would "show that at least Dan Casey and Jim Bartley [Mega Lift's President], and probably several others, were aware of two piece by-pass plungers which used separator rods with varying cross-sectional areas." *See* "Mega Lift Systems, Inc.'s Invalidity Contention Chart" ("Final Invalidity Contentions"), Exh. B to Motion, p. 2 (citing Bartley Deposition).[4] In the required chart, Mega Lift stated only in connection with Claim 3 that Bartley described in his deposition a system using a separator rod tested by Bartley and Casey more than one year before the filing date of the application for the '060 Patent. *See* Final Invalidity Contentions, p. 42. It is

---

[4]    Bartley had been deposed earlier in April 2006.

undisputed that Mega Lift did not identify the Casey System in compliance with the Amended Discovery Order, either by the August 10, 2005 deadline or "immediately" after obtaining information about the Casey System. It is also undisputed that Mega Lift did not identify Casey or the Casey System in its Preliminary Invalidity Contentions. Indeed, although mentioned in the Final Invalidity Contentions, Mega Lift did not produce until after the close of discovery any evidence regarding its position that the Casey System includes the critical feature of the '060 Patent – that the sleeve is held on the separator rod by the flow of formation contents.

The Court finds that the references to Casey and the Casey System in the Final Invalidity Contentions are untimely because it is beyond dispute that Mega Lift was aware of this information well before the deadlines set forth in the Amended Discovery Order and the Docket Control Order. Bartley's deposition testimony, as described in Mega Lift's Final Invalidity Contentions, reflected that he and Casey together tested the Casey System well before this lawsuit was filed. Additionally, the evidence establishes that Mega Lift's counsel represented Casey and "had to get a waiver from him" to represent Mega Lift in this case. *See* Email from Kent Rowald, Exh. B to Reply.

Mega Lift and its attorney have failed to provide any explanation for their failure to identify Casey and the Casey System as required by the Court's Amended Discovery

Order and Docket Control Order. It is clear that, if it existed, the Casey System is potentially significant evidence in this case. Mega Lift failed to provide MGM with adequate information regarding its reliance on the Casey System in a timely manner that would enable MGM to conduct discovery on the issue.[5] Although the Court could reopen discovery, this case has been pending for quite some time, dispositive motions have been filed and fully briefed, and the case is scheduled for docket call in February 2007. Trial is scheduled to begin March 5, 2007. Reopening discovery at this late date destroys the Court's and parties' goal of expeditious and fair disposition of this case. It amounts to a classic, but unjustified, "do-over" for Mega Lift, causing prejudice and unwarranted expense to MGM, who met its pretrial deadlines and thus timely disclosed all its facts and full strategy to Mega Lift. The Court declines to reopen discovery and delay the final resolution of this case. Instead, the Court exercises its discretion to preserve the integrity and purpose of the Amended Discovery Order, the Docket Control Order, and the Court's Patent Rules.

---

[5] Mega Lift argues that MGM has known about the Casey System "for several years." *See* Response, p. 3. Mega Lift's statement regarding MGM's prior knowledge of the Casey System, as opposed to Casey's patent, is based on recanted statements by Casey and is speculative at best. More importantly, the threshold issue is not whether MGM knew of the Casey System, but whether Mega Lift timely disclosed its reliance on the Casey System as a basis for challenging the validity of the '060 Patent.

Absent any evidence whatsoever of diligence, and in light of the indication in the record that Mega Lift made a conscious decision to conceal its reliance on potentially significant evidence regarding the Casey System, the Court grants MGM's Motion to the extent it seeks exclusion of evidence of the Casey System.

### C.    Internal Configuration and Dimensions of the Accused Device

MGM seeks to exclude evidence regarding the internal configuration of Mega Lift's plunger lift "Chaser" system and the purported inner and outer diameters of its padded plungers to the extent they differ from the information Mega Lift originally provided to MGM. Pursuant to the Court's Patent Rule 3-4, Mega Lift was required to produce by September 30, 2005, any specifications, schematics, or other documentation "sufficient to show the operation of any aspects or elements" of the accused device. Mega Lift produced drawings, but did not produce specifications and schematics showing the final assembled plunger that revealed the outer diameter of the padded plunger. In February 2006, Mega Lift permitted MGM to visit its shop in Tyler, Texas, to inspect and photograph a Chaser system assembly, also referred to as the Mega Lift "lubricator."

In April 2006, during the Rule 30(b)(6) deposition of Bartley as Mega Lift's representative, it was revealed for the first time that Mega Lift had not produced drawings of all the commercial embodiments of its accused products. In response to

MGM's repeated requests for the relevant drawings, Mega Lift stated that a representative sample of the Mega Lift Chaser lubricator was available for inspection at counsel's office. MGM's counsel inspected, measured, and photographed the representative sample of the accused products at the office of Mega Lift's counsel. The lubricator at counsel's office was consistent with Mega Lift's most recently dated drawing of the lubricator. Because Mega Lift had not produced drawings, specifications, or other documentation regarding the dimensions of the padded plunger, MGM's expert took measurements of the representative sample provided by Mega Lift at its counsel's office.

During a deposition of Bartley on August 30, 2006, after the official close of discovery, Bartley initially agreed that the inspected Chaser lubricator was representative of its accused device. Later in the deposition, however, Bartley changed his testimony to state that the lubricator Mega Lift had provided for inspection at its counsel's office was not representative because the Mega Lift Chaser lubricator no longer includes an undercut flow passageway adjacent to the upper outlet of the lubricator. Bartley revealed that the drawings depicting the undercut passageway and even the date of the drawings were inaccurate. Bartley testified that the drawings Mega Lift initially produced to MGM had been created exclusively for use in this lawsuit.

Bartley testified that he knew of no documentation that would substantiate his position that Mega Lift no longer produces the lubricator with the undercut passageway.

Bartley also testified that the dimensions of the accused padded plungers cited in MGM's expert's report were inaccurate. Also after the close of discovery, Mega Lift produced new drawings that Bartley contends reflect the correct dimensions of Mega Lift's padded plungers.

MGM claims that it relied on the drawings and representative Chaser lubricators that Mega Lift originally produced. MGM asks the Court to exclude the untimely produced drawings that contradict the original drawings and Bartley's testimony that the representative lubricator was not truly representative.

Mega Lift defends its conduct by arguing that MGM's counsel "could have inspected as many Mega Lift devices as were present in [Mega Lift's] shop." *See* Response, p. 8. MGM's counsel, however, is not required to inspect and measure a shop filled with lubricators that Mega Lift will later claim – contrary to its earlier representations – are non-representative of what Mega Lift actually markets. Additionally, MGM's counsel had no reason to inspect the internal configuration and dimensions of the Mega Lift lubricator during his February 2006 visit to Mega Lift's shop. It was not until April 2006 that Mega Lift first asserted that its plungers do not

have the necessary flow passageways because of the dimensions of the padded plunger and the internal configuration of the Mega Lift lubricator.

Mega Lift fails to explain why the purported "representative" lubricator in counsel's office was not truly representative. Nor does Mega Lift explain why it presented a non-representative lubricator to MGM during discovery, claiming the sample was representative. Only after the official close of discovery did Mega Lift finally reveal its position that the lubricator it provided for MGM's inspection in fact was not representative of lubricators that Mega Lift sells.

Mega Lift concedes that it produced drawings that did not reflect the lubricator it now claims that it markets. Amazingly, however, Mega Lift blames MGM for not sending interrogatories or requests for admission to determine whether the drawings were accurate.

The Court finds that during discovery, and in response to key pre-trial discovery deadlines, Mega Lift timely produced to MGM drawings that Mega Lift now claims are inaccurate and timely provided for inspection a Chaser lubricator that Mega Lift now claims is non-representative. MGM was entitled to rely on the drawings and on the lubricator Mega Lift provided to MGM as representative of the product marketed by

Mega Lift. MGM was entitled to do so without expending time and resources asking Mega Lift to confirm that what it had produced was truly accurate.[6]

Mega Lift failed to provide accurate specifications, schematics and other documentation of the accused device as required by the Court's Docket Control Order and Patent Rules. The new drawings and purported internal characteristics of the Chaser lubricator produced after the close of discovery are untimely. The record is devoid of evidence of diligence on the part of Mega Lift. Instead, the record contains evidence that Mega Lift's conduct was intentionally misleading. During the August 25, 2006 deposition of MGM's expert, Mega Lift's counsel hinted that the expert was using inaccurate data, stating "[w]e'll give you an opportunity at a later time to recalculate that, when you see what was really being used as opposed to what you've used as numbers." *See* Deposition of Dr. Jim Lea, Exh. F to Reply, p. 176. MGM's attorney then asked Mega Lift's attorney, "[a]re you ever going to present any evidence of that, or are you just going to continue to allude to that?" *Id.* In response, Mr. Rowald stated "[t]here will be evidence of that presented at the appropriate time." *Id.* Apparently, Mega Lift and its counsel believed that the appropriate time was after discovery closed. They were incorrect.

---

[6] This is particularly true here because the drawings Mega Lift originally produced were consistent with the lubricator Mega Lift provided for inspection. MGM had no reason to question whether the two pieces of consistent information were both accurate.

The Court holds that Mega Lift, having failed to provide accurate information in accordance with the timing requirements in this case, and having not explained its failure to do so, cannot now rely on conflicting drawings and measurements it provided only after discovery closed. As a result, the Court grants MGM's Motion to exclude belatedly produced evidence regarding the internal configuration and dimensions of the Mega Lift Chaser lubricator and its padded plunger that is inconsistent in any manner with the drawings originally produced and the lubricator provided to MGM as representative of the Chaser lubricator marketed by Mega Lift.

## III.   CONCLUSION AND ORDER

Mega Lift failed to identify the alleged Casey System in accordance with the Court's Docket Control Order and Patent Rules. Mega Lift either failed to provide accurate drawings and identify representative components of its two-piece plunger lift system within the timing requirements of the Docket Control Order, or provided accurate drawings and a representative lubricator that it now wants to contend were inaccurate.[7] Absent any showing of diligence on Mega Lift's part, and based on

---

[7] The Court makes no finding regarding whether the originally produced drawings were incorrect *or* whether they were correct and Mega Lift now falsely contends that the drawings are inaccurate. Similarly, the Court does not decide whether or not the lubricator provided to MGM's counsel as representative was in fact representative of Mega Lift's commercially available lubricator. The Court's only ruling is that Mega Lift is bound by the drawings it originally produced and the lubricator it provided to MGM's counsel as a representative sample of Mega Lift's Chaser lubricator.

evidence that Mega Lift and its counsel intentionally concealed its reliance on the undisclosed information and its position that originally produced information was inaccurate, it is hereby

**ORDERED** that Plaintiff's Motion to Exclude Evidence and Argument Regarding Defenses and Evidence That Defendant Failed to Timely Disclose [Doc. # 107] is **GRANTED**.

SIGNED at Houston, Texas, this **24th** of **January, 2007**.

_____
Nancy F. Atlas
United States District Judge